IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action No. |
| | ) | 07-00275-01-CR-W-NKL |
| DANIEL W. TEAL, | ) | |
| | ) | |
| Defendant. | ) | |

### REPORT AND RECOMMENDATION
### TO ACCEPT DEFENDANT'S GUILTY PLEA

On March 13, 2008, I held a change-of-plea hearing after this case was referred to me by United States District Judge Nanette Laughrey. I find that Defendant's plea was voluntary and therefore recommend that it be accepted.

### *I. BACKGROUND*

On August 7, 2007, an indictment was returned, charging Defendant with one count of conspiracy to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846; one count of carrying a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i); and one count of criminal forfeiture, pursuant to 21 U.S.C. § 853. A change-of-plea hearing was held on March 13, 2008. Defendant was present, represented by appointed counsel Daniel Hobart. The government was represented by Assistant United States Attorney Bruce Rhoades. The proceedings were recorded and a transcript of the hearing was filed on March 17, 2008.

### *II. AUTHORITY OF THE COURT*

The authority of federal magistrate judges to conduct proceedings is created and defined by

the Magistrates Act, 28 U.S.C. § 636. Besides certain enumerated duties, the Act provides that a "magistrate may be assigned such additional duties as are not inconsistent with the Constitution and the laws of the United States." 28 U.S.C. § 636(b)(3).

The Eighth Circuit, following the reasoning of several other circuits, has held that magistrate judges may preside over allocutions and pleas in felony cases, so long as certain procedural safeguards are met. United States v. Torres, 258 F.3d 791, 795-96 (8th Cir. 2001); see also United States v. Dees, 125 F.3d 261 (5th Cir. 1997), United States v. Williams, 23 F.3d 629 (2d Cir. 1994). The reasoning applied by the appellate courts relies upon previous opinions by the United States Supreme Court that conducting jury *voir dire* falls within a magistrate judge's "additional duties" when the defendant has consented. See Torres, 258 F.3d at 795 (citing Peretz v. United States, 501 U.S. 923 (1991); Gomez v. United States, 490 U.S. 858 (1989)).

In Peretz, the Supreme Court held that when a defendant consents to a magistrate judge's involvement in *voir dire*, he waives any objection based on his right to have an Article III judge hear his felony case. 501 U.S. at 936. Moreover, the availability of *de novo* review by a district judge preserves the structural guarantees of Article III. Torres, 258 F.3d at 795. Applying the Peretz holding and adopting the reasoning of Williams, the Eighth Circuit held that the acceptance of guilty pleas bears adequate relationship to duties already assigned by the Magistrates Act in that "[a]n allocution is an ordinary garden variety type of ministerial function that magistrate judges commonly perform on a regular basis." Id. (quoting Williams, 23 F.3d at 633). Plea allocutions are substantially similar to evidentiary proceedings explicitly assigned by the Act. Id. at 796 (citing Dees, 125 F.3d at 265). Even if taking a guilty plea were considered to be of greater importance than those duties already assigned, the consent of the defendant saves the delegation. Id. "Consent is the

2

key." Id. (quoting Williams, 23 F.3d at 633).

The Torres court also addressed the implications of such a delegation for Article III's case and controversy clause. Id. Because plea proceedings are submitted to the district court for approval, the court retains ultimate control over the proceedings and is not bound to accept a plea taken by a magistrate judge. Id. Moreover, the district court's *de novo* review of the plea proceedings contributes to the ministerial nature of the magistrate judge's role. Id.

Based on the above, I find that, with the consent of the defendant, the District Court may properly refer a felony case to a Magistrate Judge for conducting a change-of-plea hearing and issuing a report and recommendation on whether the plea should be accepted.

### III. FINDINGS OF FACT

1. The parties consented to the delegation of the change of plea to the magistrate judge (Tr. at 3-4).

2. On August 7, 2007, an indictment was returned, charging Defendant with one count of conspiracy to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846; one count of carrying a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i); and one count of criminal forfeiture, pursuant to 21 U.S.C. § 853. The court read the charges against Defendant and Defendant indicated that he understood the nature of the charges (Tr. at 4-6).

3. The statutory penalty for conspiracy to distribute methamphetamine is not less than ten years but not more than life imprisonment, a fine of not more than $4,000,000, a supervised release term of not less than five years, and a $100 mandatory special assessment fee; the statutory penalty for carrying a firearm in furtherance of a drug trafficking crime is not less than five years

3

consecutive imprisonment, a fine of not more than $250,000, a supervised release term of not more than three years, and a $100 mandatory special assessment fee; with regard to the forfeiture count, the government has identified $9,839.00 in currency (Tr. at 6-7, 19-20). Defendant was informed of the penalty ranges and indicated that he understood (Tr. at 6-7, 19-20).

    4.    Defendant was advised of the following:

        a.    That he has a right to a trial by jury of at least 12 individuals and that their verdict must be unanimous (Tr. at 7-8);

        b.    That he has the right to assistance of counsel throughout the trial (Tr. at 8);

        c.    That Defendant is presumed innocent, and the government has the burden of coming forward to prove Defendant's guilt beyond a reasonable doubt (Tr. at 9);

        d.    That Defendant's attorney would have the opportunity to cross-examine the government's witnesses (Tr. at 9);

        e.    That Defendant has the right to testify but does not have to, and that the jury could not make an adverse inference from the fact that Defendant may not testify at trial (Tr. at 9-10); and

        f.    That Defendant has the right to subpoena witnesses to testify on his behalf (Tr. at 10).

    5.    Defendant was informed and understood that by pleading guilty, he was giving up all of the rights described above (Tr. at 10-11).

    6.    Defendant was informed that during the change-of-plea proceeding, he would be

4

placed under oath and questioned by counsel and the judge (Tr. at 11). Defendant was further informed that he must answer questions truthfully while under oath (Tr. at 11-12). Defendant stated that he understood (Tr. at 12).

    7.    There has been open file discovery in this case (Tr. at 12).

    8.    Defense counsel stated that he had reviewed the government's file and confirmed from his own independent investigation that it was wise for his client to plead guilty (Tr. at 12).

    9.    If this case were to go to trial the government's evidence against Defendant would be as follows. On February 20, 2007, the West Central Missouri Drug Task Force was conducting surveillance on local businesses in the Clinton, Henry County, Missouri area for pseudoephedrine sales (Tr. at 13). This surveillance and subsequent investigation produced a source of information concerning trafficking of methamphetamine by Defendant (Tr. at 13). This source also indicated that Defendant had previously been armed during drug transactions, and the descriptions led the police to believe he was armed with both a .45-caliber and a .380-caliber handgun (Tr. at 13). During further investigation and surveillance, Defendant was located in a motel in Clinton, Missouri, on the evening of February 20, 2007, which is within the Western District of Missouri (Tr. at 13, 16). A Henry County state search warrant was obtained and executed on February 21, 2007, at the motel room (Tr. at 13). Defendant and a female were located inside the room (Tr. at 13). Officers located approximately two ounces of methamphetamine, various drug use and distribution paraphernalia, and $4,339.00 in the room (Tr. at 13-14). Defendant had flushed additional methamphetamine down the toilet (Tr. at 14). Lab reports confirmed that the drugs tested positive for methamphetamine (Tr. at 15).

    On February 22, 2007, Defendant gave a full, videotaped statement after being

advised of his Miranda rights (Tr. at 14). He admitted to buying and selling more than 500 grams of methamphetamine in the last year and detailed his operation of distribution, including naming his sources, competition and customers (Tr. at 14, 16). Defendant admitted to carrying handguns when he conducted or possessed large amounts of narcotics and money (Tr. at 14, 15). He admitted that the money found pursuant to the search warrant, $4,339.00, was from drug sales; he also stated he had an additional $5,000.00 from drug sales in another location which he subsequently turned over to the officers (Tr. at 14). Defendant further admitted he had a .45-caliber and .380-caliber handgun in another location, and told officers when and how he obtained those guns (Tr. at 14-15). He subsequently turned the handguns over to law enforcement (Tr. at 15).

After Defendant was indicted, the Henry County Sheriff's Office and the Missouri State Highway Patrol went to a residence in Henry County to locate him (Tr. at 15). The officers were told Defendant lived at the residence but was not home (Tr. at 15). They obtained consent to search for him anyway and eventually located Defendant in a locked bedroom, where he was laying on the bed (Tr. at 15). After Defendant was arrested, the officers located a loaded .25-caliber pistol under the pillow on the bed where Defendant had been laying (Tr. at 15). A loaded .35-caliber Marlin rifle was located between the box springs and the mattress (Tr. at 15). The officers recovered .25-caliber bullets and a small amount of marijuana from Defendant's person (Tr. at 15).

10. Defendant was placed under oath (Tr. at 17). He stated he agreed with the factual basis set forth by the government (Tr. at 17). With regard to Count I, Defendant then admitted that sometime between February 1, 2006, and February 22, 2007, he was within the Western District of Missouri (Tr. at 17-18). During that time, he entered into an agreement or understanding with others concerning the distribution of 500 grams or more of methamphetamine, a Schedule II controlled

6

substance (Tr. at 18). He knew that what he was doing was unlawful yet did so knowingly and intentionally (Tr. at 18). With regard to Count II, Defendant admitted that between February 1, 2006, and February 22, 2007, while within the Western District, carried both a Walther PPK/S .38-caliber semi-automatic handgun and a HK USP 45 .45-caliber semi-automatic handgun during drug-trafficking activities (i.e., the conduct charged in Count I of the indictment) (Tr. at 19). Defendant stated he carried the handguns to protect himself and/or his interest in the methamphetamine (Tr. at 19).

In his own words, Defendant stated obtained methamphetamine from several regular sources and then sold it to others (Tr. at 20). He had guns over the course of the conspiracy to protect himself and the product (Tr. at 20-21).

11. Defendant understood that there was no written plea agreement (Tr. at 7, 21).

12. No one had made any threats or any other promises in order to get Defendant to plead guilty (Tr. at 21).

13. Defendant is satisfied with the representation he has received from Mr. Hobart (Tr. at 21). There is nothing he has done that Defendant did not want him to do, and there is nothing he wanted him to do that he has not done (Tr. at 22).

14. Defendant is thirty-eight years old and has a tenth grade education (Tr. at 22). He did not have any difficulty understanding what went on during the change of plea hearing and had not encountered any difficulty communicating with Mr. Hobart (Tr. at 22). Defendant did not have any physical or mental health concerns that would prevent him from entering an intelligent and voluntary plea of guilty to these charges (Tr. at 22-23). He was not under the influence of drugs or anything else that would cloud his ability to intelligently waive his right to a jury trial (Tr. at 22-23).

7

Case 4:07-cr-00275-DGK   Document 44   Filed 03/25/08   Page 7 of 9

15. Defendant tendered a plea of guilty to Counts One and Two of the Indictment and agreed to forfeit his interest in the money or anything else the government could tie to the drug activity (Tr. at 23-24).

16. The parties waived the ten-day objection period to the Report and Recommendation (Tr. at 24).

## V.  ELEMENTS OF THE CHARGED OFFENSES

The elements necessary to sustain a conviction for conspiracy to distribute methamphetamine include: (1) there was an agreement to distribute methamphetamine; (2) the defendant knew of the agreement; and (3) the defendant intentionally joined the conspiracy. United States v. Savatdy, 452 F.3d 974, 977 (8th Cir. 2006). The elements necessary to sustain a conviction for carrying a firearm in furtherance of a drug trafficking crime include: (1) the defendant carried a firearm; (2) commission of the underlying offense that carrying the firearm is furthering. United States v. Rodriguez-Moreno, 526 U.S. 275, 280 (1999); United States v. Cuervo, 354 F.3d 969, 990 (8th Cir. 2004)(reversed on other grounds).

## V.  CONCLUSION

Based on the above, I make the following conclusions:

1. The district court may lawfully refer this case to a magistrate judge for issuance of a report and recommendation on whether Defendant's guilty plea should be accepted.

2. Defendant has consented to having his plea taken by a magistrate judge.

3. Defendant knowingly and voluntarily pleaded guilty to conduct establishing every element of Counts One and Two of the Indictment and agreed to forfeit his interests as charged in Count Three.

Therefore, it is

RECOMMENDED that the court, after making an independent review of the record and the applicable law, enter an order accepting Defendant's guilty plea and adjudging Defendant guilty to Counts One and Two of the Indictment.

                                                   /s/ Robert E. Larsen
                                                   ROBERT E. LARSEN
                                                   United States Magistrate Judge

Kansas City, Missouri
March 25, 2008